# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 09cr4201WQH |
|---|---|
| Plaintiff, | 11cv250WQH |
| vs. | ORDER |
| JOSE SOSA-SANDOVAL, | |
| Defendant. | |

HAYES, Judge:

The matter before the Court is the motion to vacate, correct or set aside sentence pursuant to 28 U.S.C. § 2255 filed by Defendant Jose Sosa-Sandoval. (ECF No. 43).

## BACKGROUND FACTS

On October 21, 2009, Defendant Jose Sosa-Sandoval and Leopoldo Sosa-Sandoval, Defendant's brother, were arrested after Drug Enforcement Agency and Immigration and Customs Enforcement agents executed a search warrant at Defendant's residence, located at 625 Corvina Street in Imperial Beach, California. Agents discovered two handguns, multiple rounds of ammunition, 30.60 grams of marijuana, and a rental agreement and utility bill for another residence located at 706 Church Street in Chula Vista, California ("Church Street residence"). Later that day, agents executed a search warrant at the Church Street residence, where they found approximately 138 pounds of methamphetamine.

On April 15, 2010, a superseding information was filed as part of a plea agreement, charging Defendant with conspiracy to distribute over 15 kilograms of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1). (ECF No. 25 at 14). As part of the signed plea

1 agreement, Defendant admitted that on several occasions "between 2007 and October 21, 2009, he agreed with others, including Leopoldo Sosa-Sandoval and 'Huaracha,' to distribute cocaine and methamphetamine by meeting with couriers who smuggled narcotics through the California Ports of Entry ..." *Id.* at 3. After crossing the border, the couriers would meet with Defendant and Leopoldo Sosa-Sandoval, Defendant's brother. *Id.* at 3-5. Defendant and his brother Leopoldo would take the vehicles to the Church Street residence "where the methamphetamine or cocaine was stored until distribution to the Central District of California (i.e. Los Angeles and Riverside areas)." *Id.* Between October 2008 and July 2009, authorities intercepted six of the couriers vehicles, containing a total of 326.85 pounds of methamphetamine and cocaine. *Id.* Defendant also assisted in "storing approximately 80 pounds of methamphetamine" at the Church Street residence. *Id.* at 6.

On April 15, 2010, Defendant entered a plea of guilty to the superseding information before the Magistrate Judge. (ECF No. 53-8 at 4). The Magistrate Judge found that Defendant's waiver of indictment was knowing and voluntary. *Id.* at 3. Defendant stated in open court that he had discussed his plea agreement thoroughly with his attorney. *Id.* at 9. Defendant acknowledged that he was waiving his constitutional right to plead not guilty and to have a jury trial. *Id.* at 5-6. Defendant stated that he understood that the sentencing judge would consider, but not be bound by, sentencing guidelines in determining his sentence. *Id.* at 7-8. Defendant stated that he understood that the mandatory minimum sentence that could be imposed in this case was 10 years imprisonment and that the maximum sentence was a life term of imprisonment. *Id.* at 7. Defendant acknowledged that he was waiving his right to appeal or collaterally attack the sentence imposed. *Id.* at 9-10. Defendant's counsel, Donald Nunn, stated that he had thoroughly discussed the plea agreement with his client. *Id.* at 10. Defendant acknowledged in open court that the facts stated as a basis of the plea agreement were true. *Id.* at 11-19. The Magistrate Judge accepted the Defendant's plea of guilty and found it to be knowing and voluntary. *Id.* at 18. The Magistrate Judge entered his findings and recommendation, and no objection was made. (ECF No. 26).

On May 4, 2010, this Court accepted Defendant's plea of guilty to Count 1 of the

superseding information. (ECF No. 28).

On November 1, 2010, this Court held a sentencing hearing. Defendant submitted a letter to the Court in which he requested a change of counsel due to a "conflict of interest." (ECF No. 43-1 at 1). Defendant's letter stated: "I have requested the discovery of my case and have received nothing. ... I have asked my attorney to investigate my home for exonerating evidence. My attorney refused all requests...." *Id.* The Court inquired further and Defendant said, "well, the truth is that I just think it's a lot. That's 150-something or 100 months that they're giving me when I accepted my guilt without being forced and I pled guilty and am remorseful about it." (ECF No. 58 at 5). The Court continued the matter for one week for Defendant and his counsel Nunn to discuss the matter. *Id.* at 6.

On November 8, 2010, a status hearing was held. Nunn told the Court that he "met at length with [Defendant] last week and we discussed everything from the beginning of the case to this point." (ECF No. 49 at 2). Defendant told the Court that he wanted a new attorney because "[I] never received a copy of my case" and "never saw the indictment." *Id.* at 4. The court granted Defendant's request and appointed Keith Rutman to represent Defendant. *Id.*

On November 15, 2010, a status hearing was held. The Court scheduled a January 10 sentencing hearing, so as to give Rutman time to familiarize himself with the case and to meet with Defendant.

On January 10, 2011, Defendant was sentenced to a term of imprisonment of 142 months, followed by 5 years of supervised release. (ECF No. 53-9 at 4).

On February 7, 2011, Defendant filed the § 2255 motion now pending before the Court.

**CONTENTIONS OF THE PARTIES**

Defendant moves the Court to vacate, set aside, or correct his sentence on the following grounds: 1) Nunn rendered ineffective assistance by failing "to adequately and professionally investigate [Defendant's] case," 2) Rutman rendered ineffective assistance by failing "to adequately and professionally discuss the case with [Defendant]" before sentencing, and 3) Defendant's plea of guilty was not knowing and voluntary. (ECF No. 43 at 4). Plaintiff United States asserts that "Sosa can not [sic] demonstrate ... that Nunn's acts or Rutman's acts

were outside the wide range of professional competent assistance...." (ECF No. 53 at 12). Plaintiff United States contends that Defendant's plea was knowing and voluntary because "[Defendant] clearly admitted that he was not forced to plead guilty" and that he "understood the contents of the plea agreement." *Id.* at 11-12.

## ANALYSIS

28 U.S.C. § 2255 provides:

> A prisoner under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
>
> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of facts and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set aside the judgment and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(a) and (b).

1) <u>Ineffective Assistance of Counsel Claims</u>

In order to prevail on a claim of ineffective assistance of counsel, Defendant must show that the performance of defense counsel fell below an "objective standard of reasonableness" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984).

In order to show that counsel's representations fell below an objective standard of reasonableness, Defendant must identify "material, specific errors and omissions that fall outside the wide range of professionally competent assistance." *United States v. Molina*, 934 F.2d 1440, 1447 (9th Cir. 1991) (citation omitted). The inquiry is "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Turner v. Calderon*, 281 F.3d 851, 879 (9th Cir. 2002) (internal quotations omitted). Court applies a

1  "strong presumption that counsel's conduct falls within the wide range of reasonable
2  professional assistance ..." *Strickland*, 466 U.S. at 689.  "It is all too tempting for a defendant
3  to second-guess counsel's assistance after conviction or adverse sentence ..." *Id.* at 690.
4  "Counsel has a duty to make reasonable investigations or to make a reasonable decision that
5  makes particular investigations unnecessary." *Id.* at 691.

6  In this case, Defendant states that Nunn provided ineffective assistance by "refusing to
7  investigate my home ... to search for exonerating evidence."   (ECF No. 43-1 at 1).  Plaintiff
8  United States submits the declaration of Nunn.  Nunn stated:

> Prior to his guilty plea, ... I reviewed and discussed the discovery provided by
> the Government with Jose Sosa-Sandoval on multiple occasions. ... I told [Jose
> Sosa-Sandoval] that he could reject the Government's offer and proceed to trial.
> I also offered to investigate his case and present any type of defense.  I
> recommended that Jose Sosa-Sandoval accept the plea agreement, but told him
> that the decision belonged to him.  Jose Sosa-Sandoval elected to accept the plea
> agreement. ... At no time did I refuse to search for exonerating evidence. At no
> time did Jose Sosa-Sandoval discuss any type of exonerating evidence at his
> place of residence or indicate that witnesses would exonerate him.

14  (ECF No. 60).  Defendant's statement is contradicted by Nunn's declaration, in which he
15  stated, under penalty of perjury, that "I also offered to investigate his case and present any type
16  of defense. ... At no time did I refuse to search for exonerating evidence."  Nunn stated that "at
17  no time did [Defendant] discuss any type of exonerating evidence at his place of residence or
18  indicate that witnesses would exonerate him." Defendant's petition does not identify specific
19  exonerating evidence that Nunn ignored. Defendant has not identified evidence of a "material,
20  specific error [or] omission." *Molina*, 934 F.2d at 1447.

21  Defendant further asserts that Nunn provided ineffective assistance by failing to provide
22  him with the Government's discovery.  On November 8, 2010, Nunn told the Court that he met
23  with Defendant "at length ... and we discussed everything from the beginning of the case to
24  this point."  Nunn stated in his declaration, under penalty of perjury, that he "reviewed and
25  discussed the discovery provided by the Government with [Defendant] on multiple occasions"
26  and explained to him that  "the evidence against [him] was compelling and overwhelming."
27  The record and Nunn's declaration indicate that Nunn met with Defendant several times to
28  discuss the Government's discovery.

Defendant also contends that Rutman was ineffective for failing to adequately discuss the case with him before sentencing. Defendant states that "I had no time to acquaint myself with new counsel, nor did [Rutman] consult with me regarding my case...." (ECF No. 43 at 4). Plaintiff United States submits the declaration of Rutman. Rutman stated:

> On November 12, 2010, I met with Jose Sosa-Sandoval for 1.5 hours, where we discussed the case in general and his desire for new counsel. ... On December 13, 2010, I met with Jose Sosa-Sandoval again to discuss the discovery with him. On December 27, 2010, I met with Jose Sosa-Sandoval again to confirm what he wanted to do. ... At no time did Jose Sosa-Sandoval ever state that he wanted to withdraw his guilty plea, or I would have prepared such a motion. At no time did Jose Sosa-Sandoval indicate that he wanted more time to discuss his case or that he was not ready to go forward with sentencing.

(ECF No. 61). Rutman was appointed to Defendant's case on November 8, 2010. At the January 10, 2011 sentencing hearing, Rutman told the Court that he had reviewed the pre-sentence report with Defendant. At this same hearing, this Court asked Defendant if he had any comments to make before sentence was imposed and Defendant said, "No, it's fine." (ECF No. 53-9 at 4-5). Rutman stated, under penalty of perjury, that he met with Defendant three times and that "at no time did [Defendant] indicate that he wanted more time to discuss his case or that he was not ready to go forward with sentencing." There is no evidence in the record to contradict Rutman's sworn statements to the Court. Defendant has not identified a "material, specific error [or] omission that falls outside the wide range of professionally competent assistance." *Molina*, 934 F.2d at 1447. There is no indication that Rutman's assistance leading up to sentencing "fell below an objective standard of reasonableness." *Id.*

The Court concludes that there were no deficiencies in Nunn's or Rutman's performance and that Defendant's ineffective assistance of counsel claims are without merit.

2) <u>Knowingness and Voluntariness of Defendant's Guilty Plea</u>

"[A] plea of guilty entered by one fully aware of the direct consequences ... must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Brady v. United States*, 397 U.S. 742, 755 (1970).

Defendant contends that his "conviction [was] obtained by use of coerced confession"

1  and that his "conviction was obtained by a plea of guilty which was unlawfully induced and
2  made involuntarily and unintelligent." (ECF No. 43 at 4).
3       On April 15, 2010, with the assistance of a translator, Defendant entered a plea of guilty
4  to the superseding information. Defendant stated that he understood that the mandatory
5  minimum sentence that could be imposed in this case was 10 years imprisonment and that the
6  maximum sentence was a life term of imprisonment. When Defendant was asked whether he
7  had discussed his plea agreement thoroughly with his attorney, he stated "yes." (ECF No. 53-8
8  at 9). When Defendant was asked whether he had any questions about the plea agreement, he
9  stated "no." *Id.* Defendant acknowledged that he was waiving his constitutional right to a jury
10  trial and that he was "bound by [the] plea which means you can't take it back or withdraw it."
11  *Id.* at 8. Defendant's plea was found to be knowing and voluntary. The record conclusively
12  shows that Defendant was fully informed of the consequences of his plea and acknowledged
13  that he understood.
14       At the November 1, 2010 sentencing hearing, Defendant submitted a letter to this Court
15  in which he stated that "I made the plea voluntarily...." (ECF No. 43-1 at 2). This statement
16  is corroborated by Nunn's sworn declaration to this Court, in which he stated that "Prior to his
17  guilty plea, ... I reviewed and discussed the discovery provided by the Government with
18  [Defendant] on multiple occasions.... I recommended that [Defendant] accept the plea
19  agreement, but told him that the decision belonged to him." There is no evidence in the record
20  that Defendant was threatened or that promises were made to induce him to plead guilty.
21       The Court concludes that Defendant has not identified any facts or evidence to support
22  his claim that his plea of guilty was not entered into knowingly and voluntarily.

## CONCLUSION

24  IT IS HEREBY ORDERED that the motion to vacate, correct or set aside sentence
25  pursuant to 28 U.S.C. § 2255 filed by Defendant Jose Sosa-Sandoval (ECF No. 43) is denied.
26  DATED: September 30, 2011

*William Q. Hayes* (signature)
**WILLIAM Q. HAYES**
United States District Judge